BOARD OF CHOSEN FREEHOLDERS OF CUMBERLAND COUNTY v.
J. V. PAXSON CO.

(District Court, D. New Jersey. May 6, 1912.)

1. SHIPPING (§ 86*)—BRIDGES—INJURY FROM COLLISION—NEGLIGENT NAVIGATION OF VESSEL.

The owner of a tug *held*, on the evidence, liable for an injury to a drawbridge caused by a loaded barge in tow of the tug, on the ground that, when approaching the bridge going downstream with the intention of passing through the eastern draw, the tug was too far to the western side of the river; the result being that, when she crossed over, the ebb tide caused the barge to sheer and strike the bridge.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 343, 353–360; Dec. Dig. § 86.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. DAMAGES (§ 44*)—REMOTENESS—INJURY TO PROPERTY—INCIDENTAL EXPENSES.

Where a bridge over a river owned by a county was injured by a vessel passing through the draw through the negligence of defendant the expense of meetings of the Board of Chosen Freeholders of the county, and of its committee in connection with the repair of the bridge, the cost of advertising for bidders and other incidental expenses *held* too remote to be recoverable as damages from defendant.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 90, 91; Dec. Dig. § 44.*]

3. DAMAGES (§ 57*)—INJURIES FOR WHICH DAMAGES ARE RECOVERABLE—LAWFUL ACTS.

A county which made a contract for reconstruction of a portion of a bridge over a navigable stream cannot recover damages from one who made complaint to the War Department of the manner of the reconstruction, causing delay for which it was obliged to pay the contractor, although the complaint was not sustained; the action of defendant being entirely lawful.

[Ed. Note.—For other cases, see Damages, Dec. Dig. § 57.*]

At Law. Action by the Board of Chosen Freeholders of Cumberland County against the J. V. Paxson Company. Trial to court. Judgment for plaintiff.

Roscoe C. Ward and Walter H. Bacon, both of Bridgeton, for plaintiff.

Martin V. Bergen, Jr., of Camden, and Howard M. Long, of Philadelphia, for defendant.

CROSS, District Judge. [1] The above-entitled action was tried before the court without a jury; a jury having been waived by written stipulation pursuant to the statute. The action was brought by the plaintiff to recover damages for the destruction of a drawbridge belonging to it and spanning Maurice river, at Mauricetown, in the county of Cumberland and state of New Jersey, on the 30th of August, 1909, through the alleged negligence of the defendant's agents. On that date a barge known as the Mildred McNally was being towed on a hawser by a tugboat known as the Lizzie D, which tugboat was owned and in charge of the servants of the defendant. The barge was 187 feet long on the water line, and 23$^9/_{10}$ feet beam, and was at the time loaded with about 700 tons of sand. The drawbridge in question was originally built by the Maurice River Bridge Company, a private corporation thereunto authorized by an act of Legislature of this state. P. L. 1864, p. 583. Pursuant to that act, said company built a bridge over the Maurice river at the point in question. Subsequently, in 1871, by an act of Legislature passed in that year (P. L. 1871, p. 303), said bridge company was authorized and empowered to convey the bridge to the Board of Chosen Freeholders of the County of Cumberland, the plaintiff herein, and, pursuant thereto, such a conveyance was subsequently made, since which time the title to said drawbridge has been vested in and the bridge maintained and operated by said board of chosen freeholders, and was so maintained and operated on August 30, 1909. The draw

of said bridge turned on a pivot, resting upon a pier constructed for that purpose. When the draw was turned, two open ways for the passage of boats were provided through the bridge, one on either side of the center pier, each 58 feet in width. They are known in the case as the eastern and western draws. The accident happened while the tug and her tow on their way down the river were attempting to go through the eastern draw. The tug at the time had the barge in tow on a hawser of from 35 to 40 fathoms in length. The tide was ebb, and running at the rate of about 3 miles an hour, and the tug "clear of the current" about 3 miles an hour. The river above the bridge was about 250 beet in width. The evidence on behalf of the plaintiff shows that the tug, before coming into the reach of water leading to the bridge, signaled the bridge tender to open the draw, which was promptly done; that the tug and its tow as they approached the bridge, and for several hundred feet above it, were too far to the westward to make the eastern draw; that in crossing over to make that draw, which, because of a cross-current, was the customary one for boats to make in coming down the river, the barge in tow sheered by reason of the tide striking its port side nearly abreast, so that, while the tug was able to go through the draw, the barge was carried down by the tide and struck the eastern wing or fender of the bridge, passed through it, and struck the eastern span of the bridge, which was thereby thrown off and into the water and destroyed. The testimony, showing that the barge and her tow were too far to the westward to make the eastern draw, was given by four experienced witnesses, three of whom at least were disinterested. They all unite in saying that the tug and barge were, as they approached the bridge, too far to the westward, and farther than was customary for boats coming down the river, and intending to pass through the eastern draw. It is true that their testimony is denied by that of the captain of the tug, but in view of the fact that the plaintiff's witnesses are disinterested, and that their testimony affords the only possible way of accounting for the collision, it must be, and is accepted, as true. It is accordingly concluded that the tug and barge, being too far to the westward, as they approached the bridge, were as their course was changed to make the eastward draw brought nearly abreast of the tide, and the barge, having no power of its own, was thereby carried down to and against the eastern wing and span of the bridge. The hawser was broken by the collision and the tug passed through the draw safely. The defendant, under the circumstances, as the owner and manager of the tug, is clearly liable. It towed the barge into a position where it became dangerous and from which it was unable to, or did not, extricate it. The collision was the result of faulty towing for which, under the evidence the defendant is liable.

Pursuant to the provisions of the acts of the New Jersey Legislature above referred to, it became and was the duty of the plaintiff to erect and maintain suitable and sufficient wings to said bridge, and, as an incident thereto, to exercise ordinary care to maintain them in reasonably good and proper condition for the purpose for which they were built.

The defendant insists that the plaintiff did not discharge its duty in this behalf, and that accordingly it was guilty of negligence which contributed to produce the injury which it received. In support of this contention, it has introduced evidence to show that the piles and timbers constituting the wing and fender of the eastern span of the bridge were at the time of the accident rotten and wholly unfit for the purpose for which they were designed and constructed. A careful examination of the testimony upon this point, however, satisfactorily shows that only the sappy portion of the heads of the piles were decayed which condition will, according to the evidence, exist after a year or two of service, where they are not located wholly under water. The heart of the piles, however, was sound, and the braces and sheathing of the fender had been renewed about three years before, so that the structure as a whole was, when the accident occurred, in reasonably good repair and condition. This is shown not only by direct evidence, but inferentially by the fact that only a day or two before the accident in question the same fender had been run into by a vessel, but withstood the shock without apparent injury. That the blow which the fender received from the scow when the accident in question happened was of great force and violence must be inferred from the fact that a stick of hard yellow pine of the best quality, twelve inches square, which had been in use but three years, and was perfectly sound, was broken directly in two. The severity of the blow must therefore be accepted as a fact, notwithstanding evidence on the part of the defendant that it was of so slight a character that the paint on the bow of the barge was not even scratched. Such testimony under the circumstances, is incredible, and must be disregarded.

[2] Upon the question of damages, it appears that the eastern span of the bridge was, according to the evidence, totally destroyed, and the fender nearly so. The iron with which the framework of the span was constructed was bent and twisted, and the entire structure thrown into the river, and undisputed evidence shows that it would have cost more to have raised, straightened, and reconstructed the old span from the wrecked material, which was iron, or to have built one like it of the same but new material, than it did to build the new one, which was of steel. There is also evidence which shows that the new span of steel has neither the durability nor the strength of the one of iron, now forming the western span of the bridge, which it is stipulated in the case, was built at the same time and was in material, workmanship, and generally like the one destroyed. Consequently it inferentially, but conclusively, appears that the new span is not so good or durable as the old one was at the time of its destruction, and, since the old one could not have been repaired or reconstructed without greater expense than was involved in building the new one, it seems but right and proper to allow as damages the cost of the new span and fender, less certain deductions from the cost of the fender, to which reference will later be made.

In addition to the cost of such construction, the plaintiff seeks to recover the amount of certain fees for two meetings of the members of the Board of Chosen Freeholders, and for meetings of its committee which had in charge the superintendence of the construction of

the new span and fender; also, for the cost of advertising for contractors' bids and other incidental expenses. The items just referred to cannot, however, be allowed because they are not claimed in the declaration, and because, moreover, they are not the direct natural and proximate result of the defendant's negligence.

[3] The plaintiff also seeks to recover as an element of damage an item of several hundred dollars which it was compelled to allow the contractor who rebuilt the span and fender, for delay in the performance of his contract caused, as alleged, by the conduct of the defendant. In this connection it appears that at or about the time the construction of the span was commenced an officer of the defendant company, with others, complained to the War Department of the way in which the span was about to be reconstructed; that the Department investigated the matter, and, after hearing the parties, permitted the span to be rebuilt on the old lines. The allowance claimed by the contractor for the resulting delay was more than double the amount which was finally allowed him by the plaintiff. The amount, however, is immaterial, since for the reasons above given for the disallowance of certain other items no part of it can properly be allowed. Furthermore, it was the right, if not the duty, of the defendant, its officers, or indeed any one else, to make the complaint in order that the question of whether or not the bridge was being rebuilt at a proper place, and in a proper manner, might be investigated and determined by competent authority. That item is accordingly disallowed. The fender was practically, but not totally, destroyed. The evidence shows that the new one cost in the neighborhood of $2,000, and that the depreciation in value of the old one was from $500 to $700. Allowing $600 as representing such depreciation, and $250 as the value of the undestroyed portions, a deduction of $850 will be made from the cost of the new one and the balance of $1,150 allowed as the fair and reasonable damage sustained by the plaintiff on account of the fender.

The contract for rebuilding the span and fender was entire, and called for the payment to the contractor therefor of the gross sum of $9,590. Deducting therefrom $850 as above allowed on account of the fender, there remains a balance of $8,740, for which, with interest thereon from May 28, 1910, together with costs of suit, judgment for the plaintiff will be entered.